By the Court:

Barbour, C.J.
The general exception to the referee’s report “ that the average adjustment, statement, and apportionment in said report mentioned are incorrect, as modified by said report,” is not sufficient to entitle the appellants to claim here, as they do, that the referee erred in regard to some of the items embraced in his statement, though not all. It is, in fact, an exception to each and every item of charges, allowances, and values covered by the statement, as well as each and all the calculations of charges and apportionments, instead of being, as it should have been, such an objection to the statement or findings of the referee as would have enabled him to discover and correct his error, if any had been made. ■The amount of the judgment, therefore, cannot be questioned here if the referee has not based his calculations upon an erroneous principle, covered by some other exception.
The main question in the case is, whether the plaintiffs are *433 entitled to contribution from the owner of the petroleum as in general average, or only for the value of the services rendered by them in removing and. preserving it.
At the time the vessel and her cargo were sunk the whole of the property was in the custody and under the control of the master, as an entirety, for all the purposes of the voyage, including of course its preservation from loss, and upon such sinking it became and was his duty to take the proper steps for raising and saving the property, if it could be recovered at a reasonable expense, without regard to the relative rights or interests of the respective owners inter se, or, in other words, just as he would have done had there been but one owner of both vessel and cargo. He had reason to believe, and the ultimate result proved the correctness of his opinion, that most of the cargo remaining on board, as well as the schooner itself, could be raised and saved by an expenditure of less money than the property as a whole would be worth when recovered, and his employment of the company to save the property was, therefore, right and proper. The course taken by the company in that employment also seems to have been just what was required under the circumstances. The deck load, which it appears was still in danger of being lost by a future storm or a high tide, was first taken away, and then they removed a sufficient quantity of the cargo in the hold to lighten the schooner so far that she could be raised and towed to a place where the remaining cargo could be taken out and the vessel herself put in dock for examination and repair or sale. Indeed, everything that was done in regard to the recovery of the goods and vessel appears to have been done for the benefit of all the property as a whole. The company were employed to save it all, and it requires no argument to show that the removal of the deck load was not only necessary for its own preservation, but was required for the purpose of so lightening the vessel that she could herself be raised and the remaining cargo taken out and saved, and that such removal of the petroleum from the deck contributed to the saving of all the property recovered. The case was, therefore, one of general average, and the defendant Bridge *434 was liable to contribution therein as the owner of the petroleum (see 3 Kent’s Com., 232, et seq., and cases there cited).
Having arrived at this conclusion it follows, in my opinion, that the bonds, given as they were for the purpose of securing a valid lien which entitled the salvors to. the possession of the, goods, cannot be considered as having been executed under duress.
The judgment should be affirmed, with costs.